## (C.D. 2870)

### The Rubber Corp. of Calif. *v.* United States

United States Customs Court, Second Division

(Decided on rehearing [Abstract 67872] January 17, 1967)

*Lawrence & Tuttle* and *Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.

*Barefoot Sanders,* Assistant Attorney General (*Mollie Strum* and *Charles P. Deem,* trial attorneys), for the defendant.

*Brown, Rudnick, Freed & Gesmer* (*Donald E. Paulson* of counsel) as *amicus curiae.*

Before RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: The instant protests involved the proper classification of merchandise described on the invoices as "KNEE BOOT LASTS" Item No. WX11 and "4-BUCKLE LASTS" Item #WX-04, respectively, which were imported at Los Angeles, Calif., from Japan. The knee boot lasts were classified in liquidation under 19 U.S.C.A., section 1001, paragraph 372 (paragraph 372, Tariff Act of 1930) as modified, as other machines, not specially provided for, and assessed for duty at the modified rate of 11½ per centum ad valorem. The 4-buckle lasts were classified in liquidation under 19 U.S.C.A., section 1001, paragraph 353 (paragraph 353, Tariff Act of 1930) as modified, as other articles having as an essential feature an electrical element

or device, wholly or in chief value of metal, and not specially provided for, and assessed for duty at the modified rate of 13¾ per centum ad valorem. The plaintiff contends that these lasts should be classified under the duty-free provision for "shoe machinery" under 19 U.S.C.A., section 1201, paragraph 1643 (paragraph 1643, Tariff Act of 1930) as parts of shoe machinery.

The issues in this case were previously brought to trial and decided in *The Rubber Corp. of Calif.* v. *United States*, 51 Cust. Ct. 162, Abstract 67872. The record in that trial consisted of the testimony of Henry Schrage, president of the plaintiff-importer who at that time was engaged in the business of manufacturing rubber and canvas footwear, and photographic representations of the lasts in issue, among others, and certain pieces of plant equipment used by the plaintiff in association with the lasts in the manufacture of footwear. Among other things, it was brought out in the evidence adduced at that trial that the involved lasts were used in the making of rubber knee boots and overshoes, that the lasts were mounted upon jacks which were secured to a moving conveyor powered by an electrical motor, that in such posture the lasts were moved from work station to work station along the route traveled by the conveyor during which phase precut rubber and fabric pieces were assembled to the lasts by workers positioned at each work station, and that when the various materials were fully assembled on the lasts the lasts were removed from the jack conveyor, placed on racks which in turn were put on shoe cars, and then transported into a vessel where the lasted footwear underwent a vulcanization process. It was further established in the evidence that the assembling of materials on the lasts were essentially hand operations with the exception of the use of utility machines for sole pressing or side pressing operations, and that the purpose or function of the jack conveyor in the plaintiff's plant was to move the work from one work station to another.

On this evidence this division of the court held (assuming without deciding that boot and overshoe machinery come within the tariff designation for shoe machinery) that the plaintiff had failed to establish that the jack conveyor, of which the lasts in question are said to be a part, is chiefly used in the manufacture of shoes, and is not a general purpose conveyor, and overruled the protests.

At the instance of the plaintiff the court's decision and judgment were vacated and set aside and rehearing was granted in *The Rubber Corp. of Cailf.* v. *United States*, 51 Cust. Ct. 193, Abstract 67965. And at the ensuing trial held pursuant to rehearing plaintiff offered the testimony of David R. Brewer, a former general foreman (making department), plant superintendent, and assistant factory manager in the plaintiff firm, and at the time of the rehearing, personnel manager

for the Randolph Rubber Co., a manufacturer of footwear who acquired the plaintiff company by purchase subsequent to the time of the first trial. The witness gave testimony on the basis of his experiences with the plaintiff company and with U.S. Rubber, a manufacturer of rubber and canvas footwear with whom the witness was employed prior to his association with the plaintiff. Among other things, Mr. Brewer testified that the last is the basis of conventional shoemaking, that in forming shoes or other footwear on the last the last is placed on a jack or a jack conveyor, that a jack is a holding for the last, that the jack heads of the conveyor swivel so that the shoe being formed on the last attached to it may be turned around to enable the operator to put the foxing on it, that while one could use the last to form a shoe without the use of the jack conveyor by holding the last, such a conveyor would have to be used from a commercial standpoint,* that the conveyor shown in plaintiff's exhibit 2-A is a rotary-type jack conveyor as distinguished from an over and under-type jack conveyor and is only one of many types of conveyors, that the jacks or jack heads are mounted on stanchions which are welded to a drive chain, that the chain is driven over pulleys (driven sprockets) by means of the engagement of cogs of a main wheel sprocket (driving sprocket) which engage the chain links and take it around the frame of the conveyor, that the conveyor is powered by an electrical motor containing a vary drive speed adjustment mechanism with reduction gears which transfers the energy from the motor to the chain through the main sprocket, and that the source of energy necessary to power the mechanism could be changed from electricity to another form of power without altering the conveyor by changing the energy transfer system.

The witness also testified that in his opinion the jack conveyor could not, to his knowledge, be used for anything other than containing lasts or in making shoes or footwear (by vulcanizing methods as distinguished from machine methods). The witness was of the opinion that the conveyor could be modified or changed to suit the user, although he was not able to suggest any such modifications or changes. It does not appear who manufactured or constructed the rotary-type jack conveyor in use in the plaintiff's plant. Mr. Brewer stated, however, that some of these conveyors had been made by the Randolph company with whom he was then employed, that the engineering department was then in the process of constructing one, and that the company buys the parts such as the chains, the cogs (sprockets), jack heads, stanchions, and makes the framework of the conveyor in its machine shop.

---

*It is not shown whether commercial considerations prompt the use of a conveyor system in the manufacture of rubber boots and overshoes on an industry-wide basis, or just in the plaintiff's operations.

On the strength of Mr. Brewer's testimony plaintiff now contends that it has established chief use of the jack conveyor in the manufacture of shoes. We think not. Mr. Brewer's testimony, while perhaps more detailed and informative of plaintiff's manufacturing methods and equipment than that previously given, is nonetheless, merely cumulative of the previous evidence given by the plaintiff. We fully agree with the defendant's contention that the testimony of a single witness concerning practices in but one company other than the plaintiff company does not establish the requisite breadth of use across an industry as yet undefined, in the manner contended for herein by the plaintiff, and that plaintiff has not established that the conveyor in question is not a general purpose conveyor. *United States* v. *Hudson Shipping Co., Inc., et al.*, 49 CCPA 92, C.A.D. 802.

For the reasons stated, we conclude that the plaintiff has failed to prove the chief use of the conveyor system here involved in the manufacture of shoes. Therefore, reaffirming the views expressed by this division of the court in *The Rubber Corp. of Calif.* v. *United States*, 51 Cust. Ct. 162, Abstract 67872, the instant protests are overruled, without, however, affirming the classification of the subject merchandise under paragraph 372.

Judgment will be entered accordingly.